IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES, *ex rel.*, <br> P-1 CONTRACTING, INC., *et al.*, | : | Case No. 3:12-cv-418 |
| Plaintiffs, | | Magistrate Judge Michael J. Newman <br> (Consent Case) |
| vs. | : | |
| THE QUANDEL GROUP, INC., *et al.*, | | |
| Defendants. | : | |

**ORDER DENYING DEFENDANTS THE ASPIRE GROUP OF OHIO, LLC'S AND WESTERN SURETY COMPANY'S MOTIONS FOR JUDGMENT ON THE PLEADINGS (DOCS. 20, 24)**

This is a Miller Act case brought by a supplier of labor and materials -- against a subcontractor, the prime contractor and the prime contractor's bonding company -- to recover payment for services allegedly rendered.[1]  *See* 40 U.S.C. § 3131 *et seq*.  This matter is now before the Court upon Fed. R. Civ. P. 12(c) motions for judgment on the pleadings by Defendants The Aspire Group of Ohio, LLC ("Aspire") (doc. 20) and Western Surety Company ("Western Surety") (doc. 24); Plaintiff P-1 Contacting, Inc.'s combined memorandum in opposition to both motions (doc. 26); Western Surety's reply memorandum (doc. 27); and Aspire's reply memorandum (doc. 29).

**I.**

A motion for judgment on the pleadings should be granted when, taking all well-pleaded allegations in the complaint as true, "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Tucker v. Middleburg-Legacy Place, LLC*,

---

[1] Plaintiff also brings state law claims:  breach of contract; unjust enrichment; and a violation of the Ohio Prompt Pay Act, Ohio Rev. Code § 4113.61(A)(1).  The Court has supplemental jurisdiction of these claims.  *See* doc. 1; 28 U.S.C. § 1367.  These claims are not now at issue.

539 F.3d 545, 549 (6th Cir. 2008). Documents attached to the pleadings as exhibits are considered incorporated therein and may be considered in evaluating a Rule 12(c) motion. *See* Fed. R. Civ. P. 10(c); *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Accordingly, the Court may properly consider the United States Postal Service certified mail receipt and tracking results here at issue. *See* doc. 1-2.

## II.

This case arises out of a construction project to renovate Building 410 at the Dayton V.A. Medical Center. Complaint (doc. 1) ¶ 7. Aspire was the prime contractor on the project. *Id.* ¶ 8. Aspire obtained a bond securing payment to the subcontractors, in accordance with the Miller Act, from Western Surety.[2] *Id.* ¶¶ 10-11; 40 U.S.C. § 3131. Aspire subcontracted work to Defendant Quandel, *id.* ¶ 9, and Quandel, in turn, subcontracted demolition work to P-1 Contracting. *Id.* ¶ 12. P-1 Contracting commenced work onsite on October 12, 2011. *Id.* ¶ 16. On December 19, 2011, Plaintiff stopped performing work on the project allegedly due to Quandel's non-payment. *Id.* ¶ 23.

The Miller Act imposes a notice requirement on a second-tier subcontractor, such as P-1 Contracting, which seeks recovery on a payment bond: it must provide written notice to the prime contractor within ninety (90) days from the last day it performed work on, or supplied services to, the project. 40 U.S.C. § 3133(b). This controlling statutory provision provides in relevant part:

---

[2] The Miller Act requires prime contractors on federal construction sites to post payment bonds. *United States ex rel. Interstate Mech. Contractors, Inc. v. Int'l Fid. Ins. Co.*, 200 F.3d 456, 459 (6th Cir. 2000). "The payment bond provides security to persons who supply labor or materials for the project. Such suppliers are precluded from filing liens on government facilities, and instead are granted a federal cause of action to satisfy any deficiency in payment by the prime contractor." *Id.* Accordingly, a second-tier subcontractor (*e.g.*, a subcontractor to a subcontractor) may seek compensation from the prime contractor's bond if the second-tier subcontractor does not receive payment for its services. *See id.*; 40 U.S.C. § 3133(b)(2).

> A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. The notice shall be served--
>
> (A) by any means that provides written, third-party verification of delivery to the contractor at any place the contractor maintains an office or conducts business or at the contractor's residence; or
>
> (B) in any manner in which the United States marshal of the district in which the public improvement is situated by law may serve summons.

*Id.* § 3133(b)(2).

The issue before the Court is a narrow one. P-1 Contracting does not dispute that it was required to comply with the Miller Act's 90-day notice requirement. *See* doc. 26. Further, the parties agree as to the relevant facts: (1) the 90-day notice period expired on Monday, March 19, 2012;[3] (2) P-1 Contracting sent written notice to Aspire by certified mail before the deadline passed; and (3) the United States Postal Service left a notice of attempted delivery at Aspire's usual place of business on Thursday, March 15, 2012 (four days before the deadline), but the certified mail was not delivered to Aspire until March 22, 2012 (three days after the deadline). *See* docs. 20, 24, 26, 27, 29. Rather, the disagreement between Plaintiff and Defendants is a legal one -- whether, accepting these agreed-upon facts, the Miller Act's notice requirement has been satisfied.

### III.

Specifically, the question before the Court is whether the Miller Act's notice requirement

---

[3] P-1 Contracting last performed work on the project on December 19, 2011. Doc. 1 ¶ 28. The 90-day deadline thereafter fell on Sunday, March 18, 2012, which was extended, under the Federal Rules of Civil Procedure, until Monday, March 19, 2012. *See* Fed. R. Civ. P. 6(a)(1)(C).

is satisfied when the Postal Service attempts to deliver the notice to the contractor within the statutory period, but the contractor does not receive the notice until after that period has passed. This is an issue of first impression both within this Court and the Sixth Circuit.  Aspire and Western Surety rely on the Fourth Circuit's opinion in *Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340 (4th Cir. 1992) to support their proposition -- that P-1 Contracting failed to satisfy the notice requirement.  *See* docs. 20, 24.  The Fourth Circuit, in *Pepper Burns*, held that actual receipt of the notice within the 90-day period is necessary to satisfy the Miller Act, and found that merely mailing it within that window was insufficient.  *Id.* at 1343.  The Court agrees with the Fourth Circuit's analysis given the facts before it, but finds *Pepper Burns* distinguishable from the instant case in one important respect.  Here, not only was the notice placed in the mail during the statutory period, but the Postal Service attempted to deliver it (during business hours) four days before the statutory period expired.  There is no indication of such facts in *Pepper Burns*.

When a postal carrier is unsuccessful in his or her attempt to deliver certified mail, the carrier leaves a notice of the attempted delivery at the address, and the certified mail is held at the Post Office for the addressee.  *See* United States Postal Service, Domestic Mail Manual § 508.1.1.7, *available at* http://pe.usps.com/text/dmm300/508.htm#1044900.  Thus, having been notified of the attempted delivery on March 15, Aspire could have retrieved its certified mail at the Post Office that same day or Friday, March 16 or Monday, March 19 (and perhaps also on Saturday, March 17) -- all dates within the statutory window.  To that end, Aspire had some control over whether it timely received P-1 Contracting's notice of its claim on the payment bond.  "Beyond contravention, most adult Americans are cognizant that critical, time-sensitive official communications are frequently dispatched via certified mail."  *Graham-Humphreys v.*

4

*Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 559 (6th Cir. 2000).  With reasonable diligence, Aspire could have received the requisite notice from P-1 Contracting within the statutory period.  In light of such facts, the Court finds that Aspire's lack-of-timely-notice argument is unavailing.[4]

In other contexts, the Sixth Circuit has rejected similar arguments -- that a party did not timely receive the requisite notice -- when the Postal Service attempted to deliver the notice by certified mail.  *See, e.g.*, *United States v. Bolton*, 781 F.2d 528, 531-33 (6th Cir. 1985) (finding coal miners received the required notice when they refused certified letters notifying them of their violations under the Surface Mining Control and Reclamation Act); *Patmon & Young Prof'l Corp. v. Comm'r*, 55 F.3d 216, 217-18 (6th Cir. 1995) (holding that a taxpayer cannot defeat the statutory notice requirement by refusing the certified delivery of a tax deficiency notice); *Graham-Humphreys*, 209 F.3d at 558-60 (finding the limitations period -- to file a Title VII employment discrimination claim -- automatically begins five days after the right-to-sue letter is sent, even if the plaintiff does not actually receive the notice within the five-day window, in cases where the Postal Service left notification of an attempted certified delivery within that time frame).

Accordingly, the Court holds that the Miller Act's notice requirement was satisfied in light of the facts of this case.  This finding comports with the Supreme Court's directive to give the Miller Act "a reasonable construction in order to effect its remedial purpose."  *Fleisher Eng'g & Constr. Co. v. United States*, 311 U.S. 15, 16-19 (1940) (excusing the subcontractor's technical violation of the Miller Act notice requirement -- *e.g.*, by sending the notice by regular mail).  Further, to hold otherwise would encourage parties to avoid service of the required Miller

---

[4] There is no suggestion that the certified notice was in any manner not obvious or not found by Aspire once delivered by the Postal Service.

Act notice.  *Cf. Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991) (finding there is good cause to extend the time for service of process under Rule 4(m) when the defendant has intentionally evaded service of process).[5]

## IV.

Therefore, the Court **DENIES** both Aspire's motion for judgment on the pleadings (doc. 20); and Western Surety's motion for judgment on the pleadings (doc. 24).

**IT IS SO ORDERED.**

May 21, 2013                                                              s/ **Michael J. Newman**
                                                                          United States Magistrate Judge

---

[5] Finally, the Court likewise finds fault with Western Surety's arguments.  The Miller Act does not require the subcontractor give written notice to the bond company.  *See* 40 U.S.C. § 3133(b)(2).  Further, as the Court finds Aspire was properly notified, P-1 Contracting's Miller Act claim on the payment bond against Western Surety remains.